[Cite as *State v. Vargas*, 2024-Ohio-1797.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-46 |
| | : | |
| v. | : | Trial Court Case No. 2022-CR-0581 |
| | : | |
| RENE A. VARGAS, JR. | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 10, 2024

. . . . . . . . . . .

ROBERT L. SCOTT, Attorney for Appellant

MEGAN HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Rene A. Vargas, Jr. appeals from the trial court's revocation of his community control and its imposition of a 30-month prison sentence for aggravated drug possession, a third-degree felony.

{¶ 2} Vargas contends the trial court erred in finding a community-control violation based on a positive drug test. He also claims the trial court erred in imposing a 30-month

prison sentence for a "technical" violation.

{¶ 3} We conclude that the trial court acted within its discretion in revoking Vargas's community control based on the positive drug test. We also see no error in its imposition of a 30-month prison sentence because the violation at issue was non-technical. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand jury indicted Vargas on one count of aggravated drug possession with a forfeiture specification. He pled guilty to the charge and specification in exchange for the State's recommendation of a community-control sanction. The trial court accepted the guilty plea and placed Vargas on community control. Approximately three weeks later, the probation department alleged that he had violated a community-control condition by testing positive for methamphetamine.

{¶ 5} The violation allegation proceeded to a July 20, 2023 revocation hearing. Based on the evidence presented, the trial court found that Vargas had violated a community-control condition prohibiting his use of illegal drugs. The trial court revoked community control and imposed a 30-month prison sentence. Vargas timely appealed, advancing two assignments of error.

## II. Analysis

{¶ 6} Vargas's first assignment of error states:

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND BY A PREPONDERANCE OF THE EVIDENCE THERE WAS SUFFICIENT EVIDENCE THE APPELLANT WAS IN VIOLATION OF THE TERM OF**

**HIS COMMUNITY CONTROL.**

{¶ 7} The community-control condition at issue provided that Vargas would "not possess, use, purchase or have under [his] control any narcotic drug, other controlled substance, mood altering substance, or illegal drugs[.]"

{¶ 8} During the revocation hearing, probation officer Joshua Mixon testified that he screened Vargas's urine for illegal substances on June 1, 2023. The procedure involved Vargas providing a urine sample, which was subjected to an "instant test" showing the presence of methamphetamine. After obtaining that positive result, Mixon sent the urine sample to a toxicology lab for further analysis. The lab provided Mixon with a report confirming the presence of methamphetamine. Although the report did not specify the quantity present, it indicated that the methamphetamine level was above 250 nanograms per milliliter, the confirmation threshold for a positive result.

{¶ 9} On cross-examination, Mixon stated that he did not know whether 250 nanograms was "a significant cutoff." He later opined that the precise quantity of methamphetamine in Vargas's urine was immaterial because any drug use was a violation. Defense counsel briefly questioned Mixon about second-hand ingestion of methamphetamine. Mixon responded that he did not know whether a person could be affected by second-hand methamphetamine smoke.

{¶ 10} Vargas then testified on his own behalf. He denied using methamphetamine prior to the urine test. He insisted that if he had used the drug, he would have admitted it. As evidence of his forthrightness, he testified that he had used methamphetamine just four days before the revocation hearing. On cross-examination, Vargas confirmed that he

had used methamphetamine days before the hearing while insisting that he had not done so prior to the positive test result. To explain the positive result, he suggested passive inhalation, stating: "I was in a house where methamphetamine was used and I wasn't fully aware until I went into the house. And, you know, I saw what was going on and I got—I wasn't—I didn't leave immediately." When asked about associating with drug users itself being a violation, Vargas clarified that he briefly had entered the house before leaving and waiting outside. Following his testimony, the trial court ruled from the bench. It found "substantial evidence" of a community-control violation based on the positive test results and revoked community control.

{¶ 11} " 'The right to continue on community control depends on compliance with community control conditions and is a matter resting within the sound discretion of the court.' " *State v. Brandon*, 2d Dist. Montgomery No. 23336, 2010-Ohio-1902, ¶ 16, quoting *State v. Schlecht*, 2d Dist. Champaign No. 2003-CA-3, 2003-Ohio-5336, ¶ 7. "Because a community control violation hearing is not a criminal trial, the State need not prove a violation beyond a reasonable doubt. * * * 'The State need only present substantial evidence of a violation of the terms of a defendant's community control.' " *Id.* at ¶ 17, quoting *State v. Cofer*, 2d Dist. Montgomery No. 22798, 2009-Ohio-890, ¶ 12. "Substantial evidence is considered to consist of more than a mere scintilla of evidence, but somewhat less than a preponderance." (Citations omitted.) *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 18 (6th Dist.).

{¶ 12} When making its substantial-evidence determination, a trial court may consider witness credibility. *State v. Shamblin*, 3d Dist. Logan No. 8-21-03, 2021-Ohio-

3784, ¶ 10, citing *State v. Miller*, 10th Dist. Franklin No. 03AP-1004, 2004-Ohio-1007, ¶ 10. "Similar to a bench trial, when reaching its decision following an evidentiary hearing, the trial court, as the finder of fact, [is] free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented." *State v. McGail*, 2021-Ohio-231, 167 N.E.3d 70, ¶ 92 (2d Dist.), citing *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28.

**{¶ 13}** With the foregoing standards in mind, we conclude that the record supports the trial court's revocation decision. Even setting aside Vargas's spontaneous admission to using methamphetamine four days before the revocation hearing, the positive results on the initial urine test and the toxicology lab's subsequent test were probative of his methamphetamine use. The trial court was not required to believe his attribution of the results to inhalation of second-hand smoke. The weight and credibility of the test results and Vargas's testimony were matters for the trial court to evaluate. The first assignment of error is overruled.

**{¶ 14}** Vargas's second assignment of error states:

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE APPELLANT TO A TOTAL OF THIRTY (30) MONTHS IN PRISON FOR VIOLATION OF COMMUNITY CONTROL.**

**{¶ 15}** Given the absence of evidence regarding the precise amount of methamphetamine in Vargas's urine and his attribution of the positive result to second-hand inhalation, he contends his violation was merely "technical" and, therefore, should have resulted in no more than a 90-day prison sentence under R.C. 2929.15(B)(1)(c)(i).

{¶ 16} In response, the State contends Vargas's sentence is not subject to review pursuant to R.C. 2953.08(G)(2). We disagree. If Vargas is correct about R.C. 2929.15(B)(1)(c)(i) capping his prison sentence at 90 days, then the trial court's 30-month sentence would be contrary to law, making it subject to appellate review.

{¶ 17} For certain felony offenses, the statute Vargas cites does limit "the penalty for technical community control violations to 90 days of local incarceration instead of a prison term." *State v. Ross*, 2d Dist. Champaign No. 2019-CA-9, 2019-Ohio-4368, ¶ 16. However, it has no applicability to Vargas. Another provision, R.C. 2929.15(E), defines a "technical violation" of community control. It states:

> (E) As used in this section, "technical violation" means a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, and to which neither of the following applies:
>
> (1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.
>
> (2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

{¶ 18} Under R.C. 2929.15(E), Vargas's violation cannot qualify as a technical one because his underlying aggravated drug trafficking conviction was a third-degree felony and his violation, using methamphetamine, is a felony criminal offense. On appeal, Vargas cites *State v. Nelson*, 162 Ohio St.3d 338, 2020-Ohio-3690, 165 N.E.3d 1110, for the proposition that determining whether a violation is technical requires a case-by-case analysis without overreliance on any one factor. But *Nelson* predated R.C. 2929.15(E), which now defines a "technical violation" in a way that excludes Vargas's violation. *See State v. Cihon*, 2023-Ohio-3108, 223 N.E.3d 991, ¶ 22 (4th Dist.) (noting that "after *Nelson* on April 12, 2021 the General Assembly amended R.C. 2929.15 to define the term 'technical violation' "). Accordingly, the second assignment of error is overruled.

### III. Conclusion

{¶ 19} The judgment of the Greene County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.